IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

BRIAN FUTCH, et al.,                    )
                                         )
                                         )
    Plaintiffs,                          )
  v.                                     )        Case No. 22-cv-1384; 22-cv-1385;
                                         )        22-cv-3246; 22-cv-3254
JB PRITZKER, et al.,                     )
                                         )
    Defendants.                          )

## OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

Before the Court is Defendants' Motion to Dismiss (Doc. 12) and Defendant's

Motion to Supplement their Motion to Dismiss with Additional Authority (Doc. 17). For

the following reasons, Defendants' Motion to Dismiss (Doc. 12) and Motion to

Supplement (Doc. 17) are GRANTED.

## I.    PROCEDURAL HISTORY

At various times in 2022, Plaintiffs filed four separate complaints, each of which

asserted the same six separate causes of action challenging the requirement to be

vaccinated for COVID-19 or submit to COVID-19 testing as a condition of employment.

(*Futch, et al. v. Pritzker, et al.*, Case No. 22-cv-1384, Doc. 1; *Logan, et al. v. Pritzker, et al.*, Case

No. 22-1385, Doc. 1; *Hercmanas, et al. v. Pritzker, et al.*, Case No. 22-3254, Doc. 1; *Payne, et*

*al. v. Pritzker, et al.*, Case No. 22-3246, Doc. 1[1]). All Plaintiffs are State of Illinois Employees

---

[1] Due to the consolidation of these cases, all further citations to the record will refer to the filings in *Futch, et al., v. Pritzker, et al.*, Case No. 22-cv-3184, unless stated otherwise.

at congregate care facilities. Plaintiffs allege being vaccinated or tested for COVID-19 violates their moral consciences, and that they sought exemption from the vaccination requirement due to their sincerely held religious beliefs. On March 30, 2023, the Court entered an order consolidating the four cases. (Doc. 9).

In Count I, Plaintiffs allege Defendants' COVID-19 Vaccination or Testing Program violates Title VII, 42 U.S.C. § 2000e. (Doc. 2 at 27). In Count II, Plaintiffs allege the program violates the Emergency Use Authorization Act, 21 U.S.C. § 360BBB-3. (*Id.* at 29). In Count III, Plaintiffs allege a violation of the Illinois Religious Freedom Restoration Act (RFRA), 775 ILCS 35/1, in that the recent amendment to the Illinois Healthcare Right of Conscience Act (HCRCA) purporting to declare that the law excludes COVID-19 vaccination requirements from its protection of individual rights burdens the religious exercise of Plaintiffs. (*Id.* at 32). In Count IV, Plaintiffs, allege the amendment to the HCRCA violates the U.S. Constitution's First Amendment Free Exercise Clause and Article I, Section 3 of the Illinois Constitution. (*Id.* at 34). In Count V, Plaintiffs allege violations of the Equal Protection Clause of the Fourteenth Amendment and Article 1, Section 2 of the Illinois Constitution on the basis that individuals who have no religious objection to COVID-19 vaccination and testing are treated more favorably than those who do. (*Id.* at 35). In Count VI, Plaintiffs allege Governor Pritzker's Executive Orders attempted to strip Plaintiffs of all procedural due process safeguards set forth in the Illinois Department of Public Health Act (IDPHA). (*Id.* at 36).

On April 24, 2023, Defendants moved to dismiss Plaintiffs' complaint. (Doc. 12). In their Motion to Dismiss, the Defendants attached several exhibits, including: the

Declaration of Amber Spainhour; the Memoranda of Understanding between the various bargaining units; the arbitration panel's decision concerning the Union's COVID-19 vaccine mandate; a letter from Erin O'Boyle stating that the vaccination policy will be suspended in the IDOC and the Illinois Department of Juvenile Justice; a letter granting Noble's exemption request; several letters granting certain Plaintiffs' exemption requests; and several letters to various Plaintiffs from the Equal Employment Opportunity Commission (EEOC). (Doc. 12 at 3, 26-161). On May 8, 2023, Plaintiffs filed a response and requested the Spainhour Declaration to be stricken. (Doc. 13 at 5). Defendants filed a reply on May 31, 2023. (Doc. 15). On August 17, 2023, the Court heard oral arguments on the Motion to Dismiss. (Minute Entry, August 17, 2023).

## II.    FACTUAL BACKGROUND

All fourteen Plaintiffs[2] are employed by one or more of the Defendants[3] in congregate care facilities operated by the State of Illinois. (Doc. 2 at 2; *Logan*, Case No. 22-1385, Doc. 3 at 2; *Hercmanas*, Case No. 22-3254, Doc. 1 at 2; *Payne*, Case No. 22-3246, Doc.

---

[2] The Plaintiffs are: Brian Futch, Jeffrey Brown, Richard Ledbetter, Michelle Classon, Afton Haggard, Richard Logan, Hughson Noble, Sharon Goldsberry, Jeffrey Cripps, Robert Hercmanas, Kacey Hanson, Brittany Payne, Peggy Johnston, and Kelly Vera.

[3] The Defendants are: Jay R. Pritzker in his official capacity as the Governor of the State of Illinois, Illinois Department of Corrections, Illinois Department of Central Management Services, Erin O'Boyle in her official capacity as the Deputy Director of Labor Relations for CMS, Sarah Kerley in her official capacity as Chief Administrative Officer of CMS, John M. Barwick in his official capacity as Warden of Vienna Correctional Center, Jean Marie Case in her official capacity as Warden of Logan Correctional Center, Sherwin Miles in her official capacity as Warden of Sheridan Correctional Center, David Mitchell in his official capacity as Warden of Pinckneyville Correctional Center, Illinois Department of Veterans Affairs, Tanya Smith in her official capacity as Administrator of Illinois Veterans Home—Manteno, Troy Culverson in his official capacity as Administrator of Illinois Veterans Home—Quincy, Illinois Department of Human Services, Charles Truitt in his official capacity as Warden of Stateville Correctional Center, Teresa Smith in her official capacity as Administrator of Choate Mental Health and Developmental Center, Greg Donathan in his official capacity as Director of Rushville Treatment and Detention Facility, Travis Nottmeier in his official capacity as Director of Chester Mental Health Center, and Lana Miller in her official capacity as director of McFarland Mental Health Center.

1 at 2). On September 3, 2021, Governor Pritzker issued an Executive Order stating that individuals employed in state-owned or operated congregate care facilities are required to be vaccinated against COVID-19, subject to bargaining. (Doc. 2 at 3-4; Doc. 12 at 2).

Following the issuance of the Executive Order, the State bargained over the vaccination requirements with Plaintiffs' unions. (Doc. 12 at 35-42). The State and the Union agreed to a Memoranda of Understanding regarding when members in their bargaining units are required to obtain their first dose of a COVID-19 vaccines. (*Id.*; Doc. 2 at 125). The bargaining also resulted in an agreement for the State to consider, and allow as appropriate, medical and religious exemptions to the vaccine requirement. (Doc. 2 at 5). The vaccination policy stated that affected employees who refuse to receive a Covid-19 vaccination and fail to submit proof of vaccination, or who fail to submit a completed exemption form by the timeframes outlined in the Policy, shall be subject to progressive discipline up to and including suspension and discharge. (Doc. 2 at 4).

Plaintiffs sought exemption from the policy due to their religious beliefs. (Doc. 2 at 5; *Logan*, Case No. 22-1385, Doc. 3 at 4; *Hercmanas*, Case No. 22-3254, Doc. 1 at 4; *Payne*, Case No. 22-3246, Doc. 1 at 4). Plaintiffs allege that they filed exemption requests and their exemption requests were denied. (Doc. 2 at 7; *Logan*, Case No. 22-1385, Doc. 3 at 6-7; *Hercmanas*, Case No. 22-3254, Doc. 1 at 4; *Payne*, Case No. 22-3246, Doc. 1 at 4). Plaintiffs object to being vaccinated or tested for COVD-19 on the basis that vaccination and testing violate their moral consciences. (Doc. 2 at 6). Plaintiffs argue they hold sincere beliefs that prevent them from submitting to health care procedures which they do not believe to be medically necessary. (*Id.*). Furthermore, Plaintiffs claim the vaccination violates their

moral consciences because they hold sincere beliefs that prevent them from submitting to health care procedures which they reasonably believe relied, in whole or in part, for research and development on the use of stem cells or other materials obtained from aborted fetuses. (*Id.* at 8). Plaintiffs also contend that their religious beliefs are being discriminated against because the policies require only unvaccinated individuals to submit to testing. (*Id.* at 8-9). Plaintiffs allege they were willing to abide by certain COVID-19 protections in lieu of forced vaccination--such as self-monitoring for symptoms, wearing a mask when appropriate, voluntary reporting of potential symptoms, and reasonable testing requirements. (*Id.* at 7-8).

## III.    DISCUSSION

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458.

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a claim. *See id.* The complaint must do more than assert a right to relief that is "speculative." *See Virnich v. Vonvald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Attachments to the Motion to Dismiss

Defendants attached several exhibits to their Motion to Dismiss, some of which were not included in Plaintiffs' complaints. (*See* Doc. 12 at 26-153). Plaintiffs argue that because their factual allegations must be taken as true for the purposes of this Motion, any portion of Defendants' Motion which challenges their factual assertions should be stricken. (Doc. 13 at 5). Defendants argue that this information is central to the complaint and may be subject to judicial notice. (Doc. 12 at 3).

Under Rule 12(b)(6), courts must assume the truth of the allegations in the complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Therefore, as a general rule, a court cannot consider the exhibits attached to a motion to dismiss. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n. 1 (7th Cir. 2021). However, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see Lax*, 20 F.4th at 1181 n. 1 (determining that because the plaintiff referenced an agency decision and an email in his complaint and they were central to his claims, the district court properly considered them). "It is 'well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they

are referred to in the [plaintiffs'] complaint and are central to [their] claim'" *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (*quoting 118 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).

"This rule is a liberal one—especially where… the plaintiff does not contest the validity or authenticity of the extraneous materials." *Mueller*, 880 F.3d at 895 (internal quotations omitted). That is because the rule is aimed at "prevent[ing] a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*quoting Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)) (cleaned up). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

Upon review of the attached exhibits, the Court finds that these documents may be considered when evaluating the arguments in Defendants' Motion to Dismiss. Notably, Plaintiff does not object to the authenticity of any of Defendants' exhibits. The memoranda of understanding between the various bargaining units, and the policies outlined in the memoranda, are repeatedly referenced in Plaintiffs' complaints. (*See* Doc 12 at 35-42; Doc. 2 at 3-4, 27-31, 50-53, 120-21). Likewise, the CMS policy is also referenced repeatedly throughout Plaintiffs' complaints. (Doc. 2 at 3-6, 108-112). Erin O'Boyle's letter was not specifically referenced by Plaintiffs, but the IDOC's vaccination policy is the subject of that letter and was referenced by Plaintiffs. (Doc. 12 at 145-46; *See* Doc. 2 at 3-6,

27-31); *See Rosenblum*, 299 F.3d at 661 (affirming the district court's consideration of a document that was not referenced by the plaintiff, but that was central to the claims). Furthermore, Plaintiffs conceded at oral argument that the IDOC did change its policy to no longer require vaccinations. (Tape #SP-1 at 3:13:30-3:14:03 p.m.). That concession underscores the authenticity of the information in O'Boyle's letter. All of these exhibits are central to Plaintiffs' claims as their claims are aimed at challenging the vaccination policy. Therefore, this Court will consider the attachments containing the memoranda of understanding, the CMS policy, and O'Boyle's letter.

The EEOC letters may also be considered. (Doc. 12 at 154-61) Plaintiffs explicitly refer to receiving their EEOC right to sue letters when discussing their claims under Title VII. (*See* Doc. 2 at 28). Additionally, Title VII provides that if the EEOC dismisses a charge or takes no action within a specified period, the EEOC "shall notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought." 42 U.S.C. sec.2000e-5(f)(1). Therefore, the EEOC letters are central to the claim will be considered by the Court.

The letters granting the exemptions may also be properly considered. Plaintiffs' complaints reference their exemption requests, and the letters demonstrate that some of the Plaintiffs' exemption requests were, in fact, approved. (Doc. 2 at 7; *Logan*, Case No. 22-1385, Doc. 3 at 6-7; *Hercmanas*, Case No. 22-3254, Doc. 1 at 4; *Payne*, Case No. 22-3246, Doc. 1 at 4; Doc. 12 at 147-53).

Additionally, a court may take judicial notice of matters of "public record" without converting a motion to dismiss into a motion for summary judgment. *See General Electric*

*Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (collecting cases). Judicial notice is most frequently used for noticing the contents of court records such as judicial orders or decrees. *General Electric*, 128 F.3d at 1081. The Seventh Circuit has recognized that arbitration decisions are subject to judicial notice. *Consolidation Coal Co.* v. *United Mine Workers of America*, 213 F.3d 404, 407 (7th Cir. 2000) (noting decisions of arbitrators "were arbitral equivalents of judicial decisions, of which, of course, a court can take judicial notice"). Therefore, this Court may take judicial notice of the arbitration opinions attached to Defendants' Motion to Dismiss. (*See* Doc. 12 at 43-138).

The final exhibit attached to the Motion to Dismiss is Spainhour's Declaration. (Doc. 12 at 25). Spainhour represents the State in negotiations with the relevant labor unions concerning the COVID-19 vaccine requirements. (*Id.*). She also has knowledge of Plaintiffs' exemption requests. (*Id.*). The Seventh Circuit has explained that affidavits may be considered in conjunction with attachments that are central to the complaint if the affiant has personal knowledge that the attached documents are accurate. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Because Spainhour has personal knowledge of the CMS policy, the exemption requests, and the negotiations between the unions and the State, the Court considers Spainhour's Declaration in ruling on the Motion to Dismiss for the limited purpose of the exhibits attached to the Declaration. Any additional facts asserted in the Declaration were not considered.

### C. Plaintiffs' Declaratory and Injunctive Relief Claims

Plaintiffs request a declaratory judgment that Governor Pritzker's Executive Order violates the IDPH Act and their procedural due process rights. As to all claims except the

Title VII claims in Count I, Plaintiffs request an injunction prohibiting the enforcement of the vaccination and testing requirements and a declaratory judgment that said requirements violate their rights. Plaintiffs contend that, even though Governor Pritzker's Executive Order requiring vaccinations for employees working in congregate care facilities has been suspended, a declaration of their rights is necessary because those COVID-19 policies are likely to be repeated the next time a novel infectious disease appears.

To the extent Plaintiffs seek a declaratory judgment or injunctive relief in Counts II-VI, the Court concludes Plaintiffs' claims are moot. A claim becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021). A claim seeking prospective declaratory relief must be dismissed as moot when relief would be pointless because the policy at issue is no longer in effect. *UWM Student Assoc. v. Lovell*, 888 F.3d 854, 860-61 (7th Cir. 2018). Because the vaccination or testing requirement is no longer in place, Plaintiffs' claims for declaratory and injunctive relief are moot and hereby dismissed.

### D. Title VII Claims

### 1. Individual Defendants

In their Amended Complaints, Plaintiffs purport to sue several state employees in their official capacities, along with state agencies as their employers. The proper defendant in a Title VII case is the plaintiff's employer. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chic.*, 69 F.4th 437, 448 (7th Cir. 2023). Title VII does not authorize suit against the employer's agents, even those who are sued in their official capacities. *See*

*Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996) (finding that defendant sued in his individual capacity is merely a supervisor and is not subject to Title VII liability); *Thanongsinh v. Board of Educ.*, 462 F.3d 762, 771 n. 7 (7th Cir. 2006) (affirming dismissal of claim against defendant school district). Consequently, to the extent the Title VII claims in Count I are asserted against the individual Defendants, those claims are dismissed.

### 2. Employers

Plaintiffs claim that the "Defendants failed to provide Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiffs because of their religious beliefs." (Doc. 2 at 28). Specifically, Plaintiffs allege neither regular asymptomatic testing nor unpaid leave of absence were a reasonable accommodation of Plaintiffs' religious beliefs because both were discriminatory and created a chilling effect on the exercise of Plaintiffs' sincerely held beliefs. (Doc. 13 at 12).

Title VII forbids employment discrimination on the basis of religion. *See* 42 U.S.C. § 2000e-2(a)(l). As used in Title VII, "religion" "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). To state a prima facie case of religious discrimination based on failure to accommodate, a plaintiff must allege that (1) "the observance or practice conflicting with an employment requirement is religious in nature;" (2) the employee "called the religious observance or practice to [the] employer's attention;" and (3) "the religious observance or practice was the basis for [the employee's] discharge or

other discriminatory treatment." *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012). If the plaintiff establishes a prima facie case, the employer-defendant must demonstrate that it cannot accommodate plaintiff's religious practice "without undue hardship to his business." *Baz v. Walters*, 782 F.2d 701, 706 (7th Cir. 1986).

Plaintiffs Cripps, Futch, Goldsberry, Hanson, Johnston, Noble, and Classon were granted exemptions from obtaining the COVID-19 vaccine. (Doc. 12 at 147-53).[4] To the extent those Plaintiffs requested a religious exemption to vaccination, Defendants offered them a reasonable accommodation—the option to submit to regular testing in lieu of vaccination. Plaintiffs contend this option constituted discriminatory treatment because only employees who did not receive the COVID-19 vaccine were required to regularly test for the virus. Plaintiffs do not identify any religious beliefs that are offended by the regular testing requirement in lieu of vaccination. Instead, Plaintiffs cite the different treatment of employees based on their healthcare choices that Plaintiffs contend are pursuant to their religious beliefs. However, it is apparent that Plaintiffs' opposition to COVID-19 testing as an alternative to vaccination is based on personal and medical reasons—such as "health complications including nose bleeds, allergic reactions, irritation of the nasal passages, and exposure to known carcinogens present on the nasal swabs required by Defendants to be used for testing"—not sincerely held religious beliefs. (Doc. 2 at 8-9). Plaintiffs' proposed accommodations which include, *inter alia*,

---

[4] While the court accepts plaintiff's allegations as true and construes all inference in the light most favorable to the plaintiff, when an exhibit "clearly contradicts" the plaintiff's factual allegations, the exhibit controls. *See Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016). In this case, the letters granting the exemptions clearly contradict these Plaintiffs' assertions that they were not granted an exemption.

wearing a mask when appropriate and reasonable testing requirements would also result in Plaintiffs being treated differently than employees who received the COVID-19 vaccine.

The Court concludes Defendants provided the aforementioned Plaintiffs with a reasonable accommodation. Title VII does not require the employer to provide the employee with his or her preferred accommodation or the one most beneficial to the employee. *Porter*, 700 F.3d at 951. Rather, the employer must simply provide an accommodation "that eliminates the conflict between employment requirements and religious practices." *Id.* "[W]hen any reasonable accommodation is provided, the statutory inquiry ends." *Cosme v. Henderson*, 287 F.3d 152, 158 (7th Cir. 2002). Therefore, the Court grants Defendants' request to dismiss Plaintiffs Cripps, Futch, Goldsberry, Hanson, Johnston, Noble, and Classon's Title VII claims asserted in Count I.

Further, Defendants argue that Plaintiffs Ledbetter, Noble, Payne, Vera, and Hercmanas did not file their complaints within 90 days of receiving their right-to-sue letters from the EEOC. In order to pursue a Title VII claim in federal court, a plaintiff must file a charge of discrimination with the EEOC, and then must file suit in federal court within 90 days of receiving a right-to-sue letter from the EEOC. 42 USC § 2000e-5(f)(1); *see King v. Ford Motor Co.*, 872 F.3d 833, 839 (7th Cir. 2017). Filing a complaint even one day past the 90-day deadline requires dismissal as untimely. *Lax*, 20 F.4th at 1182–83 (affirming dismissal of claim under the Rehabilitation Act, which is governed by the same rights and procedures as Title VII employment discrimination cases, because the

complaint was filed 91 days after his receipt of the right-to-sue letter, and therefore was untimely).

Plaintiff Ledbetter alleged he received his EEOC right-to-sue letter on August 11, 2022. His Complaint was filed on November 10, 2022, which is 91 days after he received the letter. Likewise, Plaintiff Noble alleged he received his right-to-sue letter on August 10, 2022, and his Complaint was filed on November 10, 2022, which is 92 days after the receipt of his letter. Therefore, Ledbetter and Noble's claims are untimely and will be dismissed. *See Lax*, 20 F.4th at 1182-83.

Vera, Payne, and Hercmanas each stated in their complaints that they filed their Complaints within 90 days of receiving their right-to-sue letters. Defendants rely on the date the EEOC letters were mailed to argue that Plaintiffs' claims are untimely. However, the date of issuance is not relevant for this determination. The Seventh Circuit has held that the filing window begins when a claimant or his attorney "actually *receives*" the right-to-sue notice. *Lax*, 20 F.4th at 1182 (*citing Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984)) (emphasis added). At this stage, the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458. Because the EEOC letters do not include the date of receipt, this Court will consider Vera, Payne, and Hermanas' claims to be timely.

Plaintiffs Brown, Haggard, Logan, Hercmanas, Payne, and Vera were not granted exemptions. Plaintiffs Brown, Logan, Hercmanas, and Vera were not terminated or disciplined. At the time of filing, a pre-disciplinary meeting was being scheduled with

Plaintiff Payne in accordance with the MOU. Plaintiff Haggard served a 10-day suspension. However, he will not be subject to any more discipline because of the Vaccination Suspension Letter.

Plaintiffs specifically object to being vaccinated for two reasons: (1) "Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures which they, competent adults, do not believe are medically necessary;" and (2) "Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures which they reasonably believe relied, in whole or in part, for research and development on the use of stem cells or other materials obtained from aborted fetuses." (Doc. 2 at 8). Plaintiffs also cite to concerns about the safety and efficacy of the vaccine, but those are not religious objections. Plaintiffs argue that they have each "been subjected to periodic discipline hearings, suspensions of [their] employment without pay, due solely to not agreeing to be vaccinated for COVID-19 or submitting to COVID-19 testing." (Doc. 2 at 2-3).

Turning to the first requirement for establishing a prima facie case of religious discrimination for a failure to accommodate, Plaintiffs must demonstrate that the "the observance or practice conflicting with an employment requirement is religious in nature." *Porter*, 700 F.3d at 951. A belief is religious if it is: (1) "religious in the person's own scheme of things"; and (2) sincerely held. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (internal quotation marks omitted). A belief is religious in a person's own scheme of things if it "occup[ies] a place parallel to that filled by God in traditionally religious persons." *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005).

Such beliefs "deal[ ] with issues of ultimate concern," such as "matters of the afterlife, spirituality or the soul, among other possibilities." *Adeyeye*, 721 F.3d at 448 (internal quotation marks omitted). A plaintiffs' assertion that "[her] belief is an essential part of a religious faith must be given great weight." *Id.* (*quoting United States v. Seeger*, 380 U.S. 163, 184 (1965)). The court does not concern itself with the truth or validity of religious belief, nor does it matter whether the belief is part of a mainstream religion or an idiosyncratic one. *Id.* Nevertheless, the court must distinguish between religious belief and other matters of personal conviction—such as medical or scientific beliefs—because only religious beliefs warrant the heightened protection of the First Amendment or Title VII. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

Here, there is the question of whether Plaintiffs' assertions constitute religious beliefs—as opposed to philosophical, medical, or scientific beliefs, or personal fears or anxieties—that conflict with the vaccination policy. The first basis that Plaintiffs rely on is that they "hold sincere beliefs that prevent them from submitting to health care procedures which they, competent adults, do not believe are medically necessary." In a similar case, *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017), the Third Circuit found that a plaintiff's beliefs regarding the flu vaccine presented medical, not religious, concerns. In that case, the plaintiff believed that "one should not harm their [*sic*] own body and strongly believes that the flu vaccine may do more harm than good." *Fallon*, 877 F.3d at 492. The plaintiff also cited to a quote from the founder of Buddhism and the moral commandment that the Third Circuit paraphrased as "Do not harm your own body." *Id.* The Third Circuit concluded that

Fallon's objections to the vaccine were not religious because "he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this vaccine." *Id.* In concluding that the District Court appropriately granted the Defendant's Motion to Dismiss, the Third Circuit noted its conclusion "is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected. However, Fallon has not presented such circumstances here." *Id.* at 493.

While the Third Circuit's opinion is not binding, it is persuasive. Plaintiffs' first belief is clearly a medical belief: it is based on whether the vaccine is medically necessary. Plaintiffs do not tie that belief to religious ideology or "issues of ultimate concern." *See Adeyeye*, 721 F.3d at 448. Unlike the plaintiff in *Fallon*, Plaintiffs do not cite to *any* religious belief that forms the basis for their objection, nor do they characterize their belief as religious, instead choosing to describe it as a "sincere belief." (Doc. 2 at 8). While Plaintiffs may hold a sincere belief, Title VII requires that the belief be religious in nature, and Plaintiffs have not met their burden in demonstrating that their belief is religious. *Porter*, 700 F.3d at 951.

Plaintiffs also argue that they "hold sincere beliefs that prevent them from submitting to health care procedures which they reasonably believe relied, in whole or in part, for research and development on the use of stem cells or other materials obtained from aborted fetuses." (Doc. 2 at 8). For a similar reason, Plaintiffs' second belief is not protected by Title VII because it is a political belief, not a religious belief. This is demonstrated by Plaintiffs' failure to tie their beliefs to any religious conviction. Other

courts have similarly held that a general objection to abortion is not a religious objection to the vaccine when the objection is not tied to a particular religious belief. *See, e.g., Bube v. Aspirus Hospital, Inc.*, 2023 WL 6037655 (W.D. Wis. Sept. 15, 2023); *Kiel v. Mayo Clinic Health System Southeast Minnesota*, 2023 WL 5000255, at *8 (D. Minn. Aug 4., 2023); *Winans v. Cox Automotive, Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023).

While this Court accepts as true that Plaintiffs have concerns with the COVID-19 vaccine, it cannot reasonably infer based on the allegations in the Complaint that those concerns are religious in nature as required by Title VII. Defendants' Motion to Dismiss is also granted as to Plaintiffs Brown, Haggard, Logan, Hercmanas, Payne, and Vera.

### D. Emergency Use Authorization Act Claims

In Count II, Plaintiffs allege the Emergency Use Authorization ("EUA") statute and the Illinois Public Health Code require protective steps before any individual can be required to undergo measures allegedly to prevent the spread of infectious disease. (Doc. 13 at 9). The relevant section of the EUA provides:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(l), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following ...
> (ii)     Appropriate conditions designed to ensure that individuals to whom the product is administered are informed-
>     (I)     that the Secretary has authorized the emergency use of the product;
>     (II)    of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and
>     (III)   of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. § 360bbb-3(e)(l)(A)(ii)(III).

Plaintiffs claim they have a right to request protection from the Court regarding experimental medical procedures being "foisted on them" as a condition of employment. Moreover, the implementation of Defendants' policies denied Plaintiffs the right to accept or refuse administration of the COVID-19 vaccines, which at the time were subject only to emergency use approval under EUA.

Plaintiffs' arguments are foreclosed by the statutory language. Section 337(a) of the Federal Food, Drug, and Cosmetic Act provides in relevant part: "Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). Subsection (b) provides that, subject to certain conditions not relevant here, "A State may bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations" of the FDCA. 21 U.S.C. § 337(b)(l). Accordingly, the FDCA does not authorize a private right of action. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 817 (1986) ("Congress has determined that there should be no private, federal cause of action for the [FDCA] violation.").

Plaintiffs provide no authority that the EUA alone or in conjunction with another statute authorizes a private right of action. In fact, Plaintiffs' counsel acknowledged at oral argument that the EUA provides no basis for a private right of action. Therefore, the Court grants Defendants' request to dismiss Plaintiffs' EUA claims asserted in Count II.

### E.  Illinois Healthcare Right of Conscience Act Claims

Plaintiffs' Counts III, IV, and V challenge Public Act 102-667, codified at 745 ILCS 70/13.5. Section 13.5 provides that measures taken by employers and others to prevent the spread of COVID-19 was not a violation of the HCRCA. Plaintiffs argue that the amendment to the HCRCA violates the Illinois Religious Freedom Restoration Act ("IRFRA"), Free Exercise Clause of the U.S. Constitution and Illinois constitution, and Equal Protection under the US Constitution and Illinois constitution. Plaintiffs request that the Court enjoin enforcement of the amended portion of the HCRCA. Defendants argue that Counts III, IV, and V should be dismissed because if Section 13.5 did not make any substantive changes to the HCRA, then Plaintiffs cannot be afforded relief and, therefore, lack standing. *Boone v. Illinois Department of Corrections*, 71 F.4th 622, 626 (7th Cir. 2023).

When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). The Supreme Court has not addressed whether Section 13.5 is a declaration of existing law or a new enactment. In the absence of a ruling by the Illinois Supreme Court, courts should "defer to interpretations offered by state appellate courts unless there is a 'persuasive indication[ ] that the state supreme court would decide the issue differently.'" *Rodas*, 656 F.3d at 626 (*quoting Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir. 2004)) (alterations in original).

Illinois appellate courts that have considered the issue have determined that Section 13.5 is a declaration of existing law. *See Glass v. Department of Corrections*, 2022 IL App (4th) 220270 (holding that Section 13.5 is an "interpretive aid" for the previously ambiguous portions of the Act); *Krewionek v. McNight*, 2022 IL App (2d) 220078 (holding

that Section 13.5 barred plaintiffs' HCRCA claim based on their termination for failure to obtain COVID vaccines). "In sum, section 13.5 of the Act now in effect removes employer requirements intended to prevent contraction or transmission of COVID-19 from the protection of the Act." *Krewionek*, 2022 IL App. 2d 220078, ¶ 38. There is nothing to suggest that the Illinois Supreme Court would, in addressing this issue, find differently than the appellate courts. Therefore, this Court concludes Section 13.5 serves as a clarification of the existing statute, rather than a substantive amendment, in accordance with its plain language and Illinois case law.

In *Boone v. IDOC*, 71 F.4th 622 (7th Cir. 2023), the Seventh Circuit considered whether, in light of the district court's determination that Section 13.5 is a declaration of existing law that did not change the HCRCA, the district court could grant the plaintiff any meaningful relief. *Id.* at 625. Furthermore, "the plaintiffs lack standing to bring—and we and the district court lack jurisdiction to hear—a challenge to a statutory measure that cannot have harmed the plaintiffs." *Id.*. Upon determining that the amendment did not change anything about the HCRCA, "[t]he district court should have immediately dismissed the plaintiffs' challenges to the amendment for lack of standing." *Id.*

Because of this Court's finding that there was no substantive change in the law, "no harm can flow from [Section 13.5], and no harm can be remedied by striking it down." *Boone*, 71 F.4th at 626. Therefore, this Court grants Defendants' Motion to Dismiss Counts III, IV, and V for lack of standing.

Even if the Court construed Section 13.5 as amending the HCRCA to repeal a previously existing statutory cause of action to challenge COVID-19 mitigation measures

on religious grounds, the Court would lack authority under the United States Constitution and Illinois Constitution to enjoin Illinois from repealing its own law. Under the United States Constitution:

> The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program. It matters not whether policymaking is involved, and no case-by-case weighing of the burdens or benefits is necessary; such commands are fundamentally incompatible with our constitutional system of dual sovereignty.

*Printz v. United States*, 521 U.S. 898, 935 (1997). The United States Constitution "does not attempt to coerce sovereign bodies, states, in their political capacity." *New York v. United States*, 505 U.S. 144, 165 (1992) (*quoting* 2 J. Elliot, Debates on the Federal Constitution 197 (2d ed. 1863)). "[T]he Constitution does not give the Judicial Branch any power to repeal laws enacted by the Legislative Branch." *Northern Border Pipeline Co. v. 64.111 Acres of Land in Will Cnty., Il.*, 344 F.3d 693, 694 (7th Cir. 2003). The same is true under Illinois law. *See Show of Shows, Inc. v. Illinois Liquor Control Comm'n*, 86 Ill. App. 2d 109, 116-17 (1st Dist. 1967) ("The Legislature generally has the undoubted right to repeal all legislative acts which are not in the nature of a private right."). Therefore, even if Section 13.5 were not a "declaration of existing law," the Court would have no authority under any constitutional provision to enjoin a state from repealing a law. Accordingly, Counts III, IV, and V are also dismissed on that basis.

### F.  Due Process Claims – IDPH Act

In Count VI, Plaintiffs allege Defendants violated their due process rights under state law in failing to follow the Illinois Department of Public Health (IDPH) Act

procedural safeguards. While Plaintiffs' Amended Complaint does not specify the source of the claim, the Court presumes Plaintiffs are proceeding under the Fourteenth Amendment. Plaintiffs assert their due process rights were violated by Defendants' failure to adhere to the procedural safeguards set forth in the IDPH Act. Specifically, Plaintiffs seek a declaratory judgment stating, for the County Health Department to require individuals to vaccinate or test, "the procedural and substantive due process requirements set forth in 20 ILCS 2305/2, as well as 77 Ill. Admin. Code 690 *et seq*." must be followed.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. A "claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). "It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

While individual state officials may be sued personally for federal constitutional violations committed in their official capacities, that principle does not extend to "claim[s] that state officials violated state law in carrying out their official responsibilities." *Pennhurst*, 465 U.S. at 121; *see Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 604 (7th Cir. 2022) (affirming denial of preliminary injunction sought by employees of the

City of Chicago and Cook County; claim that state and local Covid-19 vaccination requirements violated their procedural due process rights were barred by the Eleventh Amendment).

Here, Plaintiffs' procedural due process claims are based on Governor Pritzker's compliance with the IDPHA and the allegation that he exceeded his authority under that statute. Because this amounts to a claim that Governor Pritzker violated state law in carrying out his official duties, sovereign immunity bars Plaintiffs' claims in Count VI. *See Pennhurst*, 465 U.S. at 121; *Lukaszczyk*, 47 F.4th at 604.

## IV.    CONCLUSION

For all of these reasons, Defendants' Motion to Dismiss [Doc. 12] is GRANTED. Defendants' Motion to Supplement their Motion to Dismiss with Additional Authority [Doc. 17] is GRANTED. Counts I and II are dismissed with prejudice. Counts III, IV, and V are dismissed for lack of standing. Count VI is dismissed with prejudice.

Having determined that the only claims over which the Court has original jurisdiction will be dismissed, the Court declines to exercise supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367(c)(3). *See Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) ("With the dismissal of [plaintiff's only federal] claim, the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims."); *see also Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) ("The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'"). Any remaining state

law claims are dismissed without prejudice.   The Clerk will enter Judgment and terminate this case.

ENTER: March 6, 2024

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE